0 0 5 9 7 8

**STATE OF MAINE** STATE OF MAINE     **UNIFIED CRIMINAL DOCKET**
**CUMBERLAND,** ss CUMBERLAND, SS     CUMCD-CR-13-4054
                CLERK'S OFFICE                    13-4057
                                                  13-4058
                                                  13-4059
             2013 OCT 3 PM 1 34                   13-4060
                                                  13-4079
                                                  13-4083

                                          WSB-CUM-10/3/2013

STATE OF MAINE,

v.                                    **DECISION**

ANGELA MITCHELL, et al.,

    Defendants.


FINDINGS


1. On March 21, 2013 the Maine Legislature passed and the Governor signed H.P.

   301-L.D. 451, amending 12 M.S.R. § 6302-A. This emergency legislation, among

   other things, limited for the first time the number of statewide commercial elver

   fishing licenses the Passamaquoddy Tribe (Tribe) could issue to it's members. [1]

2. L.D. 451 was controversial. The Tribe had opposed the proposed limitation on

   the commercial elver licenses. The Tribe had argued for alternative conservation

   methods involving types of gear and volume of harvest. The Tribe's argument

   did not prevail.

3. L.D. 451 was reported out on March 18, 2013. The bill as reported out limited the

   Tribe to 150 commercial elver fishing licenses for the 2013 season. Nevertheless

---

[1] The Maine Criminal Rules do not allow for statements of fact and summary judgments.
However, the District Attorney has graciously agreed that defendants excellent
historical summary of the facts is accurate so I will rely on that summary to decide what
I perceive to be the narrow legal issues in this case. I have also relied on the letters and
other documents attached to the District Attorney's brief.

1

the Tribe on March 20, 2013 issued more than 500 commercial elver fishing licenses to its members.

4. The Tribe licenses by statute must be filed with the Commissioner of the Department of Marine Resources (Commissioner) before they became valid. The Tribe did not file its 500 plus licenses with the Commissioner until after L.D. 451 took effect. The Commissioner, faced with a mandate from the Legislature to limit the tribal commercial elver fishing licenses to 150, simply refused to accept and validate all Tribe licenses after the first 150. (The Tribe's licenses were sequentially numbered so the Commissioner chose to validate numbers one to 150 and refused to accept anymore.)

5. The nine defendants in this case are members of the Tribe. They all were issued licenses by the Tribe and all of their licenses were numbered above 150 (actually above 159 for reasons that are irrelevant to this decision).

6. All nine defendants engaged in commercial elver fishing in late April of 2013. Each received a summons for commercial fishing for elvers without a valid license.

7. On March 27, 2013 the Commissioner told the Tribe's chiefs that he would refuse to validate licenses numbered over 159. The Commissioner did not send a notice of invalidation to each license recipient. Defendants do not say in their factual history whether the Tribe's chiefs passed along the Commissioner's March 27th warning.

8. The Commissioner also posted notice of what he had done on DMR's website. He also used word of mouth by the wardens to warn individual fisherman that many tribal licenses were invalid. There is no evidence whether the defendants in this case did or did not receive such a warning.

2

DICUSSION

Defendants raised several issues in their memo, including constitutional vagueness and due process. During oral argument defendants conceded that the Legislature had the right to limit the Tribe's licenses. Defendants further conceded this given the unusual fact situation, the Commissioner chose the most logical means of determining which statewide tribal licenses were valid and which tribal licenses were not. (Validate the first 150 and refuse to validate the rest). In the end the only issue defendants pressed was that they should not be criminally prosecuted absent a specific written notice from the Commissioner to the license recipients that their tribal licenses were invalid.

The short answer on the notice issue is that Defendants received all the notice they were entitled to when the Legislature passed and published L.D. 451 and the Governor signed it, one day before the commercial elver fishing season was to begin. The previous day the Tribe had issued 550 tribal licenses. When, on the next day the Legislature used emergency legislation to limit the valid Tribal licenses to 150 in number, then everybody who had received a tribal license had an obligation to find out if his or her license was valid.

The Legislature clearly had the authority to do what it did. The Commissioner did not have the explicit authority to refuse to validate the tribal licenses that exceeded 150. However, the Commissioner had the implicit authority as part of his general administrative authority. If he had not refused to validate the excessive tribal licenses, he would have been complicit in criminal activity in direct violation of the Legislature's mandate. Also, it is important to

3

note that the Commissioner was not acting in an *ex post facto* manner. He was not invalidating a previously valid license. He was refusing to validate a proposed license.

If the Legislature had wanted the Commissioner to send the license recipients individual notices of invalidity it could have written that into the law. The Legislature chose not to do so. Instead the Legislature chose to impose a strict liability standard on the enforcement statute. Assuming for the moment that the Defendants believed the 2013 tribal licenses were valid (so far they have not made that claim) it will be of no help at trial. The state has to prove the defendants engaged in commercial elver fishing without a valid tribal license. That is all. The state does not have to prove that the defendants acted knowingly or willfully or with any other culpable state of mind.

Defendants have also filed a motion in limine regarding the status of the defendant's licenses. This is a decision best left for the trail judge.

For the reason stated above, the clerk will make the following entry on the docket by reference:

Defendant's motion to dismiss is denied.

Date:___10/3/13___          ___W. A. Brodrich___
                            William Brodrick
                            Justice, Superior Court, Active Retired

4